**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

```
HOOPER W. MATTHEWS, III,        *
et. al.,                        *
                                *
               Plaintiffs,      *
                                *
vs.                             * CIVIL ACTION NO. 17-00062-CG-B
                                *
ANKOR ENERGY, LLC, et. al.,     *
                                *
               Defendants.      *
```

## REPORT AND RECOMMENDATION

This case is before the Court on Defendants Ankor Energy, LLC, Ankor E&P Holdings Corporation, and GS E&R America Offshore, LLC's, Motions to Dismiss Plaintiffs' First Amended Complaint and supporting briefs. (Docs. 24, 25, 26, 27). The motions, which have been fully briefed and are ripe for resolution, have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. CivLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned RECOMMENDS, for the reasons stated herein, that Defendants Ankor Energy, LLC, Ankor E&P Holdings Corporation, and GS E&R America Offshore's Motions to Dismiss be **GRANTED in part** and **DENIED in part**.

## I.     __INTRODUCTION__

Plaintiffs Hooper W. Matthews, III, Dale M. Ash, and Cindy M. Colville (hereinafter referenced as the "Matthews Plaintiffs");[1] and Jerry M. Kelly, Sr., Lauren Luczkow,[2] Kelly Properties, LLP, and K&L Resources, LLP (hereinafter referenced as the "Kelly Plaintiffs"), filed the instant action against Defendants Ankor E&P Holdings Corporation and Ankor Energy, LLC (collectively referred to as "Ankor"), and GS E&R America Offshore, LLC (hereinafter "GS"), based on Oil, Gas, and Mineral Leases for various properties located in Escambia County, Alabama. (Doc. 20 at 1-3). Plaintiffs allege that they own properties located in Escambia County, Alabama, and that they entered into Oil, Gas, and Mineral Leases with Defendants or their predecessors for the lease of their mineral interests in said properties. Plaintiffs contend that the leases contain both express covenants and covenants implied at law which impose on Defendants the duty to explore for and reasonably develop Plaintiffs' oil, gas, and mineral interests; to protect said interests from drainage; and to conduct operations under the leases as would a reasonably prudent operator.

---

[1] Hooper W. Matthews, III, Dale M. Ash, and Cindy M. Colville are proceeding individually and as the Trustees of the Irrevocable Trust Agreement for the Benefits of Dale M. Ash, Cindy M. Colville, and Hooper W. Matthews, III. (Doc. 20 at 2-3).

[2] Plaintiff Lauren Luczkow is proceeding as the Trustee of the Kandace K. McDaniel Testamentary Trust for the Benefit of Charles W. McDaniel. (Doc. at 2-3).

Plaintiffs further contend that Defendants secured orders authorizing the creation and drilling of specific wells, namely the 13-16 well (Craft-Blackstone on Kelly properties), the 9-4 well (Craft-Wefel on Kelly/Matthews properties), the 14-14 well (Craft-HH Wefel III Trust on Matthews properties), and the 14-5 well (Craft HH Wefel III Trust on Matthews properties), which are collectively referenced as the "Old Home Prospect." (Doc. 20 at 6-8). Plaintiffs contend that Defendants acted negligently and wantonly and have fallen short of the standards governing reasonably prudent oil and gas operators. According to Plaintiffs, Defendants were and are inexperienced oil and gas operators who failed to devote sufficient time or resources to developing the wells, to Plaintiffs' detriment. (Id. at 8). Plaintiffs contend that Defendants have caused channeling and/or coning in the wells[3] and other waste, and that, as a result, the subject wells have performed poorly and Plaintiffs have been damaged. (Id. at 9). In their amended complaint, Plaintiffs seek recovery under a number of different theories: negligence, wanton and reckless conduct,

---

[3] Plaintiffs describe coning as a "production problem in which gas cap gas or bottom water infiltrates the perforation zone in the near-wellbore area and reduces oil production…Coning is a problem because the second phase must be handled at the surface in addition to the desired hydrocarbon phase, and the production rate of the hydrocarbon flow is usually dramatically reduced after the cone breaks through into the producing well. Production after the cone breaks through can rapidly deplete reservoir pressure and, for that reason, may force shut in the oil well." (Doc. 20 at 10-11).

breach of express and implied covenants, breach of contract, and statutory waste in violation of Code of Alabama § 9-17-11.[4]

Defendant Ankor alleges that it took great care in the operation of the wells in question, and that all operations were conducted in accordance with the applicable rules, regulations, and orders of the State Oil and Gas Board of Alabama. In its motion to dismiss, Ankor seeks dismissal of Plaintiffs' claims on a number of grounds, namely: (1) the Oil and Gas Board of Alabama has primary jurisdiction to establish whether waste has occurred; (2) Plaintiffs have failed to exhaust their administrative remedies; (3) Plaintiffs are not permitted to collaterally attack the applicable production orders issued by the Oil and Gas Board; (4) the claims asserted by the Kelly Plaintiffs are barred by res judicata; (5) Plaintiffs' claims are barred because they failed to give proper notice of any alleged breaches at issue; (6) Plaintiffs have failed to satisfy a condition precedent for alleging a violation of Ala. Code § 9-17-1 or a violation of any rule, regulation, or order promulgated by the Oil and Gas Board; (7) Plaintiffs' negligence and wantonness claims are barred by the statute of limitations; (8) Plaintiffs cannot assert any tort claims because the duties allegedly breached arises under the leases; (9) the terms and provisions of the Oil and Gas Board are

---

[4] On May 2, 2017, Plaintiffs filed an amended complaint, which became the operative pleading in this case. (Doc. 20).

incorporated, by reference, into the lease agreements; (10) Plaintiffs' statutory waste claims are not cognizable under Alabama law, and their common-law waste claim fails as a matter of law; (11) Plaintiffs failed to allege a sufficient basis for punitive damages under Ala. Code § 6-11-20; (12) the Oil and Gas Board has not made a finding of waste as defined under Alabama law, but has instead found that Defendant Ankor's operations were in conformance with the applicable orders, which would prevent waste; and (13) Plaintiffs do not own the underground oil and gas, if any, under Alabama law. (Docs. 24, 25).

In Defendant GS' motion to dismiss Plaintiffs' amended complaint, it adopted the arguments asserted by the Ankor Defendants in their brief. (Docs. 26, 27). Defendant GS also asserted that it does not own, and has never owned, any interest in the wells at issue or the leases at issue, and that it did not operate any of the wells at issue. (Id.). Plaintiffs' response in opposition addressed each of Ankor's arguments, which were also adopted by GS; however, Plaintiffs did not address the two independent issues raised by GS.

## II. <u>STANDARD OF REVIEW</u>

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the

plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"   Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of the plaintiff.  St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).  However, the court is not required to accept a plaintiff's legal conclusions.  Iqbal, 556 U.S. at 678 (noting that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

In Iqbal, the Supreme Court reiterated that while Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint must state a plausible claim for relief, which occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss.  Id.  The well-pled allegations must nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

### III. **ANALYSIS**

As noted *supra*, the Ankor Defendants have asserted a plethora of reasons in support of their motion to dismiss.  GS has adopted Ankor's arguments and has also raised advanced three independent arguments in support of its motion to dismiss.

#### a. Primary Jurisdiction

Defendants assert that the Court should invoke the doctrine of primary jurisdiction as a means of deferring to the Board the determination of whether waste exists or is imminent.  (Docs. 24 at 1; 25 at 28; 26 at 2).  According to Defendants, enforcement of Plaintiffs' claims for "waste" of underground oil and gas is not ripe until there has been a final determination by the Board, which has the special competence to make said determination and which the Alabama legislature has vested with the authority and duty determine whether or not waste exists.  (Doc. 25 at 27-28).  Plaintiffs, in response, argue tat primary jurisdiction should not be invoked because the Alabama legislature did not intend for the Board to "bar private lawsuits through the doctrine of primary jurisdiction." (Doc. 30 at 15).

Primary jurisdiction is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." U.S. v. W. Pac. R.R.

Co., 352 U.S. 59, 63, 77 S. Ct. 161, 1 L. Ed. 2d 265 (1956); Greenfield v. Yucatan Foods, L.P., 18 F. Supp. 3d 1371, 1375 (S.D. Fla. 2014) (noting that "the application of the doctrine of primary jurisdiction is a matter of deference, policy[,] and comity, not subject matter jurisdiction.") (internal quotations and citations omitted).  The doctrine applies "where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body for its views." Id. at 64.  "[T]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." Boyes v. Shell Oil Prod. Co., 199 F.3d 1260, 1265 (11th Cir. 2000); Sun Oil Co. v. Martin, 218 F. Supp. 618, 625 (S.D. Tex. 1963), aff'd by Sun Oil Co. v. Martin, 330 F.2d 5 (5th Cir. 1964) (noting that an oil and gas case involved "administrative problems of State regulation which should be left to the agency . . . empowered to handle them as one more item in a continuous series of adjustments.") (internal quotations omitted); Fraternal Order of Police, Strawberry Lodge No. 40 v. Entrekin, 314 So. 2d 663, 671 (Ala. 1975) ("One of the aims of the doctrine is to insure uniformity and consistency in dealing with matters entrusted to an administrative body.").

To determine whether primary jurisdiction should be invoked, courts consider: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a state statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." In re Horizon Organic Milk Plus DHA Omega-3 Marketing & Sales Practice Litigation, 955 F. Supp. 2d 1311, 1348 (S.D. Fla. 2013) (internal quotations and citations omitted); Pickens v. Am. Credit Acceptance, LLC, 2014 WL 4662512, 2014 U.S. Dist. LEXIS 131587 (S.D. Ala. Sept. 19, 2014).

However, the doctrine is "not designed to secure expert advice from agencies every time a court is presented with an issue conceivably with the agency's ambit." In re Horizon, 955 F. Supp. 2d at 1349. Primary jurisdiction is "a flexible doctrine to be applied at the discretion of the district court." Wagner & Brown v. ANR Pipeline Co., 837 F.2d 199, 201 (5th Cir. 1988). The Court "must weigh he benefits of obtaining the agency's aid against the need to resolve the litigation expeditiously and may defer only if the benefits of agency review exceed the costs imposed on the parties." Id. "The advisability of invoking primary jurisdiction is greatest when the issue is already before the agency." Miss. Power & Light Co. v. United Gas Pipe Line Co., 532 F.2d 412, 420 (5th Cir. 1976).

With respect to the case at bar, the Court admittedly does not confront oil and gas issues on a daily basis. This fact, however, is not a sufficient basis for invoking primary jurisdiction. Indeed, Sheffield v. Exxon Corp., 424 So.2d 1297 (Ala. 1982), provides support for the undersigned's determination that courts are appropriate venues in which to determine issues such as whether an oil and gas lease has been breached or whether an implied covenant in an oil and gas lease has been breached. In Sheffield, the Alabama Supreme Court addressed the rights and duties of the plaintiffs (landowners) and the defendants (oil companies) under an oil, gas, and mineral lease. The Alabama Supreme Court held that lessors of a property containing oil and gas may litigate the issue of whether the lessees acted as reasonably prudent operators in light of the implied covenant of protection -- the covenant that a lessee will do nothing to impair the value of the lease and will use reasonable care to protect the lessor from damage. The Court concluded that the issue of whether or not the lessees had violated that implied covenant by improperly draining the lessor's property was a proper issue for litigation. Accordingly, the undersigned finds that it is not necessary to invoke primary jurisdiction in this action, and thus, recommends that Defendants' Motion to Dismiss Plaintiffs' claims in favor of invoking primary jurisdiction be **denied**.

**b. Exhaustion of Administrative Remedies**

Defendants argue that Plaintiffs failed to exhaust all available administrative remedies because they have not sought to appeal to the Board. (Doc. 24 at 2). According to Defendants, the Board, via the Special Field Rules it issued in conjunction with permits for wells encompassing Plaintiffs' properties, provided administrative relief that Plaintiffs should have exhausted prior to instituting this action. (Doc. 25 at 26). The Special Field Rules for each of the wells involved in this dispute provide, in essence, that the Board "specifically reserves the authority to adjust the allowable as necessary to prevent waste. . .[and that] [s]uch adjustments shall be made. . . after notice and hearing, upon the Board's own motion or on the Petition of an interested party."[5]  (Doc. 25-1 at 8, 23-24, 35, 47).  Defendants argue that Plaintiffs could have also sought a remedy for their grievances via the judicial process enumerated in Ala. Code § 9-17-15. (Doc. 25 at 26-27).[6] Plaintiffs, on the other hand, argue that in

---

[5] The language for the Special Field Rules of each well differs slightly. However, the essence of the statements remains the same.

[6] The Statute provides, in pertinent part, that:

> Any interested person aggrieved by any rule, regulation or order made or promulgated by the board under this article and who may be dissatisfied therewith shall, within 30 days from the date said order, rule or regulation was promulgated, have the right, regardless of the amount involved, to institute a civil action by filing a complaint in the circuit court of the county in which all or part of the aggrieved person's property affected by any such rule, regulation or order is situated to test the validity of said rule, regulation or order promulgated by the board.

_Sheffield_, the Alabama Supreme Court made clear that judicial review of Board orders "[is] not mandatory but merely permissive[,]" and that a contrary result would not only "fly" in the face of _Sheffield_, but would also raise "serious concerns of due process." (Doc. 30 at 14).

Under Alabama law, the doctrine of exhaustion of administrative remedies "requires that[,] where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted." _Entrekin_, 314 So. 2d at 670; _see also_ _Ex parte Graddick_, 495 So. 2d 1367, 1370 (Ala. 1986) ("The doctrine of exhaustion of remedies is one of long standing in Alabama.  It provides that no one is entitled to judicial relief until all other remedies are exhausted."); _City of Huntsville v. Smartt_, 409 So. 2d 1353 (Ala. 1982).  Under Alabama's oil and gas laws, "Any interested person aggrieved by any rule, regulation or order made or promulgated by the board . . . shall, within 30 days from the date said order, rule or regulation was promulgated, have the right . . . to institute a civil action . . ." Ala. Code § 9-17-15.

As asserted by Plaintiffs, the Alabama Supreme Court, in _Sheffield_, rejected the argument that the lessors were precluded

---

Ala. Code §9-17-15.

from litigating the issue of whether the oil and gas lessees had acted as reasonably prudent operators because they had not first sought review of the Board's action pursuant to § 9-17-15. In rejecting the preclusion argument of the oil and gas lessees, the court noted that the Board's order was issued in 1972, that the unit was not drilled until 1976, that the question of drainage was not alleged to have occurred until after 1977, and that as a result, serious due process questions would be raised if the lessors were required to bring suit long before the damage was alleged to have occurred. Likewise, in the instant case, much of the alleged waste is alleged to have occurred more than 30 days after the special field rules issued for the subject wells. Under these circumstances, exhaustion under § 9-17-15 is not required; thus, Defendants' motions seeking dismissal based on lack of exhaustion are due to be **denied.**

### c. Collateral Attack on the Board's Orders

Defendants assert that Plaintiffs' complaint is due to be dismissed because it constitutes an impermissible collateral attack on the Board's Orders. (Docs. 24 at 1; 26 at 1). In support of their position, Defendants rely on the Alabama Supreme Court's ruling in Phillips Petroleum Co. v. Stryker, 723 So. 2d 585 (Ala. 1998). In Phillips Petroleum, the court held that a group of landowners' lawsuit constituted an impermissible collateral attack on a Board order because it "seriously call[ed] into question the

substance of the Oil and Gas Board's orders . . . ." Id. at 588.
Phillips Petroleum involved an order of the Alabama Oil and Gas
Board which permitted the combination of several parcels of land
into a unit ("Chatom unit") for the purpose of placing secondary
recovery operations on the property.[7]  Id.  Prior to issuance of
the Chatom unit order, the Board was required to hold a public
hearing and at least seventy-five percent of the royalty owners of
the property within the proposed boundaries had to agree to
utilization of their properties. Id. at 586.  Those properties
owners who agreed to become part of the Chatom unit then became
entitled to share in the royalties obtained from drilling of the
unit. Id.

The landowners who owned properties inside and outside the
unit filed suit with respect to their properties located *outside*
of the Chatom unit.  The landowners alleged that the company
committed fraud by withholding information from the Board. They
also asserted that the company wrongfully drained their properties
located *outside* of the Chatom unit, committed waste, and trespassed
on their properties by virtue of its operation of the Chatom unit.
The landowners prevailed at the trial level; however, on appeal,

---

[7] "[A] secondary recovery unit provides additional recovery of oil and gas in
an efficient manner." Phillips Petroleum, 723 So. 2d at 588.  Under the process,
the company injects dry gas into the ground to stimulate an increase in the
underground pressure, which in turn, increases the amount of oil and g as that
can be recovered from the property." Secondary recovery units are created by
Orders promulgated by the Oil and Gas Board of Alabama.  Id.

the Alabama Supreme Court held that the landowners' action amounted to a collateral attack on the Board's order creating the Chatom unit. Id. at 588.  In so ruling, the Court held that the landowners had never sought to have the subject properties included in the proposed Chatom unit, although they were given proper notice, and believed at least a year before the issuance of the Board's 1976 order creating the Chatom unit, that the company's operations in the Chatom fields were draining their properties. Yet, the landowners took no steps to be included in the Chatom unit, or to seek review of the Board order under Ala. Code § 9-17-15.  The Court expressly noted that the facts in Phillips Petroleum were different from those in Sheffield, which involved a dispute regarding whether lessees acted as reasonably prudent operators.

Unlike the Phillips Petroleum case, the instant action does not call into question the Board's creation of a recovery unit, but instead involves whether oil and gas lessors acted as prudent oil and gas operators, and whether they acted in compliance with the parties' oil and gas lease agreements.  Therefore, Phillips Petroleum is inapplicable to the case at bar, and this case does not constitute an impermissible collateral attack on the Board's orders.  Sheffield, 424 So. 2d at 1304; see also Phillips Petroleum, 723 So. 2d at 591 (noting that Sheffield "held that lessors of a property containing oil and gas may litigate the issue whether the lessees acted as reasonably prudent operators in light

15

of the implied covenant of protection – the covenant that a lessee will do nothing to impair the value of the lease and will use reasonable care to protect the lessor from damage."). Accordingly, Defendants' motions to dismiss Plaintiffs' complaint as an improper collateral attack on the Board's Orders are due to be **denied.**

### d. Res Judicata as to the Kelly Plaintiffs

Ankor asserts that the Kelly Plaintiffs' claims against it are barred by the doctrine of res judicata. Specifically, Ankor contends that the Kelly Plaintiffs had an opportunity to litigate their current claims against Ankor in a case brought in the Circuit Court of Escambia County, Alabama, Kelly v. Renaissance Petroleum Co., et. al., and that their failure to do so at that time precludes them from attempting to litigate their claims in the current action. (Docs. 25 at 7-9; 33 at 23-25).

"When [a court is] "asked to give *res judicata* effect to a state court judgment, [the court] must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation."" Kizzire v. Baptist Health Sys., Inc., 441 F.3d 1306, 1308 (11th Cir. 2006) (quoting Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1509 (11th Cir. 1985)); see also Muhammad v. Sec'y, Fla. Dep't of Corr., 739 F.3d 686, 688 (11th Cir. 2014). Thus, in the instant action, Alabama's res judicata principles apply.

Under Alabama law, "the essential elements of *res judicata* [frequently referred to as claim preclusion] are[:] (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions."[8] Equity Res. Mgmt., Inc. v. Vinson, 723 So. 2d 634, 636 (Ala. 1998); see also Wheeler v. First Ala. Bank of Birmingham, 364 So. 2d 1190, 1199 (Ala. 1978). "If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation." Equity Res. Mgmt., 723 So. 2d at 636.

To determine whether the same cause of action is presented in two claims, Alabama applies the "substantial evidence" test. Vinson, 723 So. 2d at 637; Kizzire, 441 F.3d at 1309. Under this test, Alabama courts consider "whether the primary right and duty or wrong are the same in each action." Old Republic Ins. Co. v. Lanier, 790 So. 2d 922, 928 (Ala. 2000). In Lanier, the Alabama Supreme Court elaborated on the substantial evidence test and observed that:

> Res judicata applies not only to the exact *legal theories* advanced in the prior case, but to *all legal theories*

---

[8] A closely related doctrine is "collateral estoppel [or issue preclusion]." For collateral estoppel to apply, the following elements must be established: (1) that an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions." Walker v. City of Huntsville, 62 So. 3d 474, 487 (Ala. 2010).

> *and claims* arising out of the same common nucleus of
> operative facts. . . . The question is whether the same
> evidence substantially supports both actions. . . . It
> is considered the same cause of action when the same
> evidence is applicable in both actions.

Id. (internal quotations and citations omitted). Put more
succinctly, "where two successive suits seek recovery for the same
injury, a judgment on the merits operates as a bar to the later
suit, even though a different legal theory is advanced in the
second suit." Id.; see also Dairyland Ins. Co. v. Jackson, 566
So. 2d 723, 726 (Ala. 1990) (noting that "the fourth element [of
res judicata] is met when the issues involved in the earlier suit
comprehended all that is involved in the issues of the later
suit."). Thus, when a claim, "which arises out of a single
wrongful act or dispute, is brought to a final conclusion on the
merits, then all other claims arising out of the same wrongful act
or dispute are barred, even if those claims are based on different
legal theories or seek a different form of damages . . ." Vinson,
723 So. 2d at 638.

Here, Ankor asserts, and the Kelly Plaintiffs do not dispute,
that the Circuit Court of Escambia County entered a judgment on
the merits of the state case.[9] (Docs. 25 at 27; 25-2). Nor is

---

[9] The state-court action is currently before the Alabama Supreme Court on appeal.
(Doc. 25 at 7). However, for purposes of res judicata, under Alabama law, a
judgment is treated as final even if it is pending before an appellate court.
Cashion v. Torbert, 881 So. 2d 408, 415 (Ala. 2003) (noting that "a judgment
will operate as res judicata, notwithstanding that it is on appeal "when the
appellate court action is based on a review of the record made below[.]"")
(quoting Alabama Power Co. v. Thompson, 32 So. 2d 795, 800 (Ala. 1947)).

there any dispute that the Circuit Court of Escambia County was a court of competent jurisdiction. (Id.). Additionally, there is no dispute that the parties to the state-court action included the current Kelly Plaintiffs and Ankor Defendants. (Id.; Doc. 25-3 at 1). Thus, the only issue in dispute is whether "the same cause of action is presented in both actions."

As noted *supra*, the Kelly Plaintiffs' current complaints against Ankor stem from waste that allegedly occurred with the Craft-Blackstone 13-16 well, and the Craft-Wefel 9-4 well. (Doc. 20). Specifically, the Kelly Plaintiffs complain that the Ankor Defendants have failed to operate the subject wells as reasonably prudent oil and gas operators in that they acted negligently and wantonly in failing to devote sufficient time or resources to developing the wells, thereby causing channeling and/or coning in the wells and other waste, and as a result, the subject wells have performed poorly, and Plaintiffs have been damaged. Plaintiffs also contend that the Ankor Defendants have breached the parties' oil and gas leases, and have breached several implied covenants. (Id. at 21-24).

While the Kelly Plaintiffs contend, in opposition, that "different oil and gas wells were litigated in the State Court lawsuit than are being litigated in [federal] court" (doc. 30 at 26), the second amended complaint from the state court action clearly reflects that claims asserted by the Kelly Plaintiffs in

19

state court included breach of lease claims against Ankor based on their alleged failure to pay royalties as a result of their successful drilling on the 13-16 well and the 9-4 well. (Docs. 25-3 at 3-4, 8; 33 at 24). Because these claims were dismissed before the action proceeded to trial, the Kelly Plaintiffs appear to assert that the state action and this action involve different causes of action, and different evidence. (Doc. 30 at 27).

Ankor, on the other hand, contends that the Kelly Plaintiffs had the opportunity to address their instant claims in the state case. (Docs. 25 at 7-9; 33 at 23-25). Ankor asserts that the fact that the Kelly Plaintiffs temporarily litigated issues related to the 13-16 well and the 9-4 well demonstrates that the Kelly Plaintiffs' current claims regarding those wells could have been litigated in the state court action. (Docs. 25 at 8-9; 33 at 24-25). Ankor thus argues that, because the Kelly Plaintiffs' current claims against Ankor *could have been litigated* in the state court action, res judicata should apply.

The Court disagrees. Ankor's argument is focused on res judicata's prohibition against claims that were, or could have been litigated, but does not take into account the similarities and differences in the evidence that was, and will be, presented in the two actions, as required by <u>Lanier</u>. In the state court action, the Kelly Plaintiffs alleged that Ankor breached its contractual agreement by failing to pay royalties after

successfully drilling on the 13-16 well and the 9-4 well.  (Doc. 25-3 at 3-5, 8-9).  In the case at bar, the Kelly Plaintiffs' claims arise from the alleged existence of waste and focuses on different conduct.  Here, the Kelly Plaintiffs are complaining that Ankor has not acted as a reasonably prudent operator, and that its negligent and wanton acts have resulted in coning and channeling in the subject wells, and has damaged the Kelly Plaintiffs as a result. At this stage of proceedings, where the Court is required to make "reasonable inferences" in favor of the Kelly Plaintiffs, Pinellas Cnty., 285 F.3d at 1337, the undersigned finds that the record is far from clear that the claims asserted by the Kelly Plaintiffs in this action could have been raised in the state court action, or that the claims will entail essentially the same evidence.  Accordingly, the undersigned finds that res judicata should not apply to the bar the Kelly Plaintiffs' claims from being asserted against Ankor in this action. Thus, Ankor's motion to dismiss the pending claims between Ankor and the Kelly Plaintiffs as barred by res judicata is due to be **denied**.

### e. Failure to Comply with Notice Requirements

Ankor asserts that Plaintiffs' amended complaint should be dismissed because each lease contains a notice requirement, which was a condition precedent to instituting this action, and the notice provided by Plaintiffs was insufficient under the guidelines stipulated in the leases.  (Doc. 25 at 9).

21

Specifically, Ankor argues that both the Kelly and Matthews leases require that lessors notify lessees if the former believes that the latter is not fulfilling its obligations under the leases. (Docs. 20 at 30, 33-34; 25 at 9).   Plaintiffs aver that the determination of whether their notice comported with contractual requirements is a question for the jury.  (Doc. 30 at 25-26).

"A condition precedent is a fact (other than the lapse of time) that, unless excused, must exist or occur before a duty of immediate performance of a promise arises.  [It] may relate either to the formation of a contract or to liability under it." Gamble v. Corley, Moncus & Ward, P.C., 723 So. 2d 627, 630 (Ala. 1998); see also Lemoine Co. of Ala., LLC v. HLH Constructors, Inc., 62 So. 3d 1020, 1025 n.5 (Ala. 2010); CAM Investments, LLC v. Totty, 128 So. 3d 749, 753 (Ala. Civ. App. 2013).

Here, both the Matthews and Kelly Leases contain provisions requiring the parties to provide Ankor with notice prior to instituting an action, in order to afford Ankor an opportunity to cure any breaches, thus making these requirements conditions precedent to instituting this action.  Specifically, the Kelly Lease states, "In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessor has breached this contract." (Doc. 20 at 30).  Similarly, the Matthews Lease states, "In the

event Lessor considers that operations are at any time not being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof." (Id. at 39).

It is undisputed that Plaintiffs provided Ankor with correspondence intended to satisfy the notice requirement contained in the leases. (Docs. 20 at 21; 25 at 9-10). In the correspondences dated January 20, 2016, Plaintiffs asserted that "this Letter constitutes Notice that Ankor E&P Holdings Corporation and or Ankor Energy, LLC have committed or otherwise allowed waste and or breached implied covenants in the . . . Lease(s)." (Doc. 25-4). The letters went on to accuse Ankor of failing to "further explore, develop and or operate" the wells at issue. (Id.). There exists a conflict as to whether the correspondence sent by Plaintiffs to Ankor comport with the requirements contained in the leases. However, at this stage of proceedings, where Plaintiffs' factual assertions are taken as true, the Court finds that it is premature to determine if the notices were sufficient as a matter of law. Accordingly, Ankor's motion to dismiss Plaintiffs' complaint due to deficient notice is due to be **denied**.

### f. Statute of Limitations as to Plaintiffs' Tort Claims

Defendants argue that Plaintiffs' tort claims, namely the negligence and wantonness claims, are due to be dismissed because

they are barred by the statute of limitations.   (Doc. 25 at 6).
Defendants assert that because Plaintiffs' claims focus on the
excessive water production from the wells at issue, the triggering
date for Plaintiffs' tort claims, or the absolute latest point at
which Plaintiffs' tort claims could have accrued, was when water
production began to exceed oil production.   According to
Defendants, it is undisputed that water production in the 9-4 well
first exceeded oil production in 2012, and that the water
production in each of the other three wells -- the 13-16, 14-5 and
14-11 -- first exceeded oil production in February, March and
September 2014 respectively; thus, the absolute latest point at
which Plaintiffs' tort claims would have accrued was September
2014. Defendants argue that this means that Plaintiffs' tort claims
are untimely because the limitations period concluded in September
2016, but the instant lawsuit was not filed until February 1, 2017.

Plaintiffs argue that their tort claims are not barred because
Alabama has long recognized that a continuous tort exists when a
defendant's repeated tortious conduct has continuously injured a
plaintiff.   (Doc. 30 at 22).   According to Plaintiffs, "the key
characteristic of a continuous tort is that the [d]efendant commits
repeated and/or systematic wrongs to the [p]laintiff." (Id.).
Plaintiffs argue that Defendants made the deliberate choice each
day to continue to negligently operate the wells, including through
improper channeling and coning, notwithstanding the fact that the

production of water continued to increase. Plaintiffs contend that their continuous injuries are the Defendants' continued negligent operation of the wells at issue. (Id.). Plaintiffs assert that the last date on which Defendants continued to negligently operate the well was June 6, 2015; thus, under the continuous tort doctrine, Plaintiffs had until June 6, 2017, to file suit for all injuries they sustained from Defendants' negligent and wanton operations. (Id. at 25).

Plaintiffs' negligence and wantonness claims are subject to a two-year limitations period under Alabama law. See Saxton v. ACF Indus., Inc., 254 F.3d 959, 962 (11th Cir. 2001) ("Under Alabama law, the statute of limitations for general tort claims is two years."); Thompson v. Vaughn, 592 So. 2d 585, 587 (Ala. 1992) (explaining that plaintiffs' negligence and fraud claims were barred by two-year statute of limitations).  Having identified the applicable limitations periods, the Court must next determine when the limitations period began to run on Plaintiffs' tort claims.

As noted *supra,* Plaintiffs insist that the statute of limitations defense has no valid application here because Defendants' activities were continuous, such that Plaintiffs' claims should fall under the ambit of the continuous tort doctrine. "When a tort is deemed continuous, the limitations period runs from the last date the plaintiff was exposed to damages." Haynie

v. Howmedica Osteonics Corp., 137 F. Supp. 2d 1292, 1294 (S.D. Ala. 2000). In Moon v. Harco Drugs, Inc., 435 So. 2d 218 (Ala. 1983), the Alabama Supreme Court explained that a continuous tort occurs when a defendant engages in "repeated tortious conduct which has repeatedly and continuously injured a plaintiff." Id. at 220. Where a continuous tort exists, the result is analogous to continuing trespass, such that "the repeated actions of the defendants combined to create a single cause of action in tort." Id. at 221. The ultimate effect of a continuous tort is to extend the statute of limitations by compressing a protracted course of conduct into a single cause of action. Id.; see also Reichert v. City of Mobile, 776 So. 2d 761, 766 (Ala. 2000) (noting that continuous torts toll the running of the statutory limitations period). However, Alabama courts have clarified that the "continuous tort" doctrine is not available in instances where a single act is followed by multiple consequences, but rather requires "repetitive acts or ongoing wrongdoing." Payton v. Monsanto Co., 801 So. 2d 829, 835 & n.2 (Ala. 2001).

Accepting as true Plaintiffs' allegations that Defendants continued to negligently and wantonly operate the subject wells through June 2015 when they ceased operations, the undersigned finds that Plaintiffs have alleged facts sufficient, at this stage of the proceedings, to establish a continuing violation. Thus, Defendants' motion should be **denied** because they have failed to

26

establish, as a matter of law, that Plaintiff's tort claims are not time-barred.

### g. Whether Plaintiffs' Tort Claims are Cognizable

Defendants assert that Plaintiffs' negligence and wantonness claims stem from alleged violations of duties created under the parties' oil and gas leases and, as such, the tort claims are not cognizable under Alabama law. (Doc. 24 at 3).  Plaintiffs argue that Alabama law specifically recognizes a duty by lessees to prevent waste of oil and gas and to protect correlative rights. (Doc. 30 at 16).

Defendants are correct that the general rule in Alabama is that the mere failure to perform a contractual obligation will not sustain an action sounding in tort. See, e.g., Barber v. Business Prods. Ctr., Inc., 677 So. 2d 223, 228 (Ala. 1996) (providing that "a mere failure to perform a contractual obligation is not a tort"), overruled on other grounds by White Sands Group, LLC v. PRS II, LLC, 32 So. 3d 5 (Ala. 2009); Sims v. Etowah Cnty. Bd. of Ed., 337 So. 2d 1310, 1313 (Ala. 1976), overruled on other grounds by Ex parte Hale Cnty. Bd. Of Educ., 14 So. 3d 844 (Ala. 2009). However, there are recognized exceptions to the rule that failure to perform under a contract will not give rise to an action in tort. See, e.g., Powers v. CSX Transp., Inc., 190 F. Supp. 2d 1284, 1295 (S.D. Ala. 2002). In fact, the Eleventh Circuit has observed that "it is possible for a tort to arise in Alabama out of a breach

of a duty implied by or arising out of a contract." <u>Brown-Marx</u> <u>Assoc., Ltd. v. Emigrant Sav. Bank</u>, 703 F.2d 1361, 1371 (11th Cir. 1983) (distinguishing between claims for breach of an obligation expressly set forth in the contract (which are not actionable in tort under Alabama law) and claim for breach of a duty implied by or arising out of the contract (which may be actionable in tort)).

A review of Plaintiffs' amended complaint reflects that Plaintiffs' claims against Defendants appear to be based not only on the parties' oil and gas leases, but also on an alleged duty implied by or arising out of the leases. Accordingly, at this juncture, where the record has not been developed and it is unclear whether Plaintiffs' negligence and wantonness claims are in actuality contract claims merely masquerading as negligence and wantonness claims or are, in fact, negligence and wantonness claims that come within the exceptions recognized under Alabama law, the undersigned recommends that Defendants' motions to dismiss these claims be **denied.**

### h. Whether the Board's Orders Supersede Contractual Terms

Defendants allege that the Board's Orders "have superseded any contrary terms, express or implied, in the oil and gas leases." (Docs. 24 at 2; 26 at 2).

In <u>Pac. Enter. Oil Co. v. Howell Petroleum Corp.</u>, the Alabama Supreme Court addressed the issue of whether Board orders supersede the provisions of oil and gas contracts.  There, the court held

that there was no conflict between the Board's orders at issue and
the oil and gas lease because the former did not address royalty
payments.[10]  Pac. Enter. Oil Co. v. Howell Petroleum Corp., 614 So.
2d 409, 414 (Ala. 1993).  The court noted that "the orders of the
regulatory authority charged with the responsibility of preventing
waste of the state's oil and gas supersede, supplement, replace,
and are incorporated in the provisions and obligations of contracts
and leases relating to mineral development.  And, that these orders
become the law as between the parties in determining their
respective rights and obligations."  Id. (quoting Jones v. Bronco
Oil & Gas Co., 446 So. 2d 611, 613 n. 3 (Ala. 1984)) (internal
quotations and citations omitted).  The court further held that,
"for a Board order to supersede or supplement a provision in a
private contract[,] the Board order and the contractual provision
must conflict."  Id. (internal quotations omitted). The Court
concluded that there could be no conflict with respect to royalty
payments because the Board's orders did not even address royalty
payments.

Here, Defendants assert that the Board's orders have
superseded any contrary provisions in the subject leases.  However,
they rely solely on the Board's Orders and Special Field Rules,
which state that "granting the Petition . . . will prevent waste

---

[10] The Pac. Enter. court did, however, find that the computation of royalties
was dependent on spacing determinations that needed to be made by the Board.
Pac. Enter., 614 So. 2d at 414.

and will protect the correlative rights of all mineral interest owners." (Docs. 25 at 24-25; 25-1 at 5, 20, 31, 42; 33 at 15). Defendants contend that this finding by the Board is enough to nullify any express and implied covenants in the Leases. (Doc. 25 at 24). Indeed, they aver that, "under Alabama law, the orders of the Board supersede, supplement, replace, and are incorporated in the provisions and obligations of the leases." (Id.). The Court rejects Defendants' contentions.

For the Court to determine that the Board's Orders superseded the terms of the leases, Defendants must demonstrate the existence of a conflict between the terms of the leases and the Board's Orders. See Pac. Enter., 614 So. 2d at 414. Defendants have made no such showing. In the absence of such, Defendants' motions to dismiss Plaintiffs' action because Board orders supersede contractual terms should be **denied**.

### i. Whether a Statutory Claim for Waste Exists

Defendants contend that Count Five of Plaintiffs' Amended Complaint, "Statutory Claim for Waste" (doc. 20 at 24), is due to be dismissed because no "statutory claim for waste" exists under Ala. Code § 9-17-19. (Docs. 24 at 3; 25 at 19; 26 at 3).

Ala. Code § 9-17-19, in its entirety, states:

(a) Nothing contained or authorized in this article and no civil action by or against the board and no penalties imposed or claimed against any person for violating any provision of this article or any rule, regulation or order issued under this article and no forfeiture shall

> impair or abridge or delay any cause of action for
> damages which any person may have or assert against any
> person violating any provision of this article or any
> rule, regulation or order issued under this article.
> Any person so damaged by violation may institute a civil
> action for and recover such damages as he may show that
> he is entitled to receive.
>
> (b) In the event the board should fail to bring a civil
> action to enjoin any actual or threatened violation of
> any provision of this article or of any rule, regulation
> or order made under this article, then any person or
> party in interest adversely affected by such violation
> or threat thereof and who has requested the board to
> institute a civil action in the name of the state may,
> to prevent any or further violation, bring a civil action
> for that purpose in any court in which the board could
> have brought a civil action.  If, in such civil action,
> the court holds that injunctive relief should be
> granted, then the state shall be made a party and shall
> be substituted by order of the court for the person who
> brought the action, and the injunction shall be issued
> as if the stated had at all times been the complaining
> party.

Ala. Code § 9-17-19.

Defendants assert that Ala. Code § 9-17-19 is "virtually identical" to a statute in Colorado, namely Colo. Stat. Ann. § 34-60-114,[11] which the Colorado Supreme Court has ruled does not create a private cause of action.  (Doc. 33 at 7).  Colo. Stat. Ann. § 34-60-114 provides, in pertinent part, that:

> Nothing in this article, and no suit by or against the
> commission, and no violation charged or asserted against
> any person under any provisions of this article, or any
> rule, regulation, or order issued under this article,
> shall impair, abridge, or delay any cause of action for

---

[11]  Defendants, in their Reply to Plaintiffs' Response, repeatedly styled the Colorado statute as "Colo. Stat. Ann. § 36-6-114" or "Section 43-60-114."  (Doc. 33 at 7-9).  However, after reviewing the relevant statutes and Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913 (Colo. 1997), in addition to docs. 33-1 and 33-2, the Court assumes that this is merely a scrivener's error.

> damages which any person may have or assert against any
> person violating any provision of this article, or any
> rule, regulation, or order issued under this article.
> Any person so damaged by the violation may sue for and
> recover such damages as he otherwise may be entitled to
> receive.  In the even the commission fails to bring suit
> to enjoin any actual or threatened violation of this
> article, or of any rule, regulation, or order made under
> this article, then any person or party in interest
> adversely affected and who has notified the commission
> in writing of such violation or threat thereof and has
> requested the commission to sue, may, to prevent any or
> further violation, bring suit for that purpose in the
> district court of any county in which the commission
> could have brought suit.  If, in such suit, the court
> holds that injunctive relief should be granted, then the
> commission shall be made a party and shall be substituted
> for the person who brought the suit, and the injunction
> shall be issued as if the commission had at all times
> been the complaining party.

Colo. Rev. Stat. Ann. § 34-60-114 (West 2018).  In <u>Gerrity Oil &</u>
<u>Gas Corp. v. Magness</u>, 946 P.2d 913 (Colo. 1997), the Colorado
Supreme Court, sitting en banc, addressed the issue of whether
Colo. Stat. Ann. § 34-60-114 provided surface owners a private
cause of action against an oil and gas operator's violation of
statutes or commission rules governing the operator's use of the
surface. The court held that neither section § 34-60-114 nor other
provisions of the Oil and Gas Conservation Act evidenced a
legislative intent to create a private cause of action.  In
reaching this conclusion, the <u>Magness</u> court determined that the
phrase, "any cause of action which a person may have or assert,"
merely preserves a person's right to assert any cause of action
for damages the person might have against a person who has violated

a commission rule or a provision of the Act, and that such a violation, standing alone, does not give rise to a damages remedy. According to the court, a violation only leads to the possibility of a private action for damages; it does not create a private cause of action.   The court further noted that use of the term, "otherwise" clarifies that a person may be entitled to receive damages when there is a violation of a commission rule, but that it is not the violation of the rule which gives rise to the entitlement.

The court also concluded that the first half of the statute could not be read in isolation from the second half.  According to the court, the language in the second half of the statute clearly permits a private party to seek injunctive relief, under certain conditions, against a defendant who has allegedly violated, or threatens to violate, provisions of the statute or commission rules, and demonstrates that the legislature considered whether to allow private causes of action under the statute, and chose to allow them only in the form of injunctive relief and only when the commission had received written notice of the violation and a request that it bring suit.   The Court held that "[w]hen statutory language indicates that the legislature considered the issue of remedies for violations of the statute or regulations issued thereunder, and chose not to include a private remedy in damages, we will not infer such a remedy." Id. at 925.

The undersigned notes that New Mexico also has a statute, N.M. Stat. Ann. § 70-2-29, which is substantially similar to Ala. Code § 9-17-19. In <u>King v. Estate of Gilbreath</u>, 2016 WL 7626248, 2016 U.S. Dist. LEXIS 188401 (D. N.M. Mar. 30, 2016), a district court in New Mexico addressed whether the plaintiffs could bring a claim for violation of N.M. Stat. Ann. § 70-2-18 under the authority of N.M. Stat. Ann. § 70-2-29 of the New Mexico Oil and Gas Act.  The plaintiffs claimed that the defendants had failed to properly pool minerals, and in doing so, they violated § 70-2-18 (B), which provides that an operator who fails to obtain voluntary pooling agreements or a pooling order from the division shall "be liable to account to and pay each owner of minerals or leasehold interest ..." The defendants, in reliance on the Colorado Supreme Court's decision in <u>Magness</u>, argued that, notwithstanding § 70-2-18 (B), private actions were not authorized under § 70-2-29. New Mexico's statute provides that:

> Nothing in this act contained or authorized, and no suit by or against the commission or the division, and no penalties imposed or claimed against any person for violating any statute of this state with respect to conservation of oil and gas, or any provision of this act, or any rule, regulation or order issued thereunder, shall impair or abridge or delay any cause of action for damages which any person may have or assert against any person violating any statute of the state with respect to conservation of oil and gas, or any provision of this act, or any rule, regulation or order issued thereunder. Any person so damaged by the violation may sue for and recover such damages as he may be entitled to receive. In the event the division should fail to bring suit to enjoin any actual or threatened violation of any statute

> of this state with respect to the conservation of oil
> and gas, or of any provision of this act, or of any rule,
> regulation or order made thereunder, then any person or
> party in interest adversely affected by such violation,
> and who has notified the division in writing of such
> violation or threat thereof and has requested the
> division to sue, may, to prevent any or further
> violation, bring suit for that purpose in the district
> court of any county in which the division could have
> brought suit. If, in such suit, the court holds that
> injunctive relief should be granted, then the division
> shall be made a party and shall be substituted for the
> person who brought the suit, and the injunction shall be
> issued as if the division had at all times been the
> complaining party.

N.M. Stat. Ann. § 70-2-29 (West 2018). In King, the court rejected

the defendant's argument that N.M. Stat. Ann. § 70-2-29 precludes

a private cause of action. In doing so, the King court observed

that while the Colorado statute provides that "[a]ny person so

damaged by the violation may sue for and recover such damages as

he *otherwise* may be entitled to receive" *(emphasis added),* the New

Mexico statute does not include the word "otherwise[.]" Id. at *5,

*11. Further, the court noted that "the Colorado statute only

refers to violations of the Act or commission rule. But New

Mexico's Section 70-2-29 additionally refers to violations of "any

statute of the state with respect to conservation of oil and gas."

Id. Based on these phrases, the King court held that "Section 70-

2-29 . . . does not suggest that a violation of New Mexico's Oil

and Gas Act does not give rise, by itself, to a damages remedy."

Id.

In this case, the parties have not identified any private actions that have been permitted under Ala. Code § 9-17-19, nor any court decisions discussing whether private actions are permitted under the statute.   Further, the Court's research has not revealed any such cases. The Court finds that the reasoning of the Colorado Supreme Court in <u>Magness</u> is very persuasive, particularly given that Alabama's and Colorado's statutes are nearly identical."[12]   Accordingly, Defendants' motions to dismiss Count Five of Plaintiffs' complaint based on the lack of existence of a statutory claim for waste are due to be **granted**.[13]

### j. Punitive Damages

Defendants argue that Plaintiffs' demand for punitive damages is due to be stricken because Plaintiffs' claims sound in contract and punitive damages are not available for injuries suffered due to breach of contract, and because Plaintiffs have failed to allege

---

[12] While Plaintiffs contend that Alabama's prohibition against waste was adopted from and is substantively identical to Ark. Code Ann.  15-72-106, Plaintiffs have provided no support for their contention, and have not identified any cases addressing whether the Arkansas statute provides a private cause of action.

[13] Defendants advanced various theories supporting their motion to dismiss Count Five of Plaintiffs' claim.  They include the arguments that, ". . . Plaintiffs do not, as a matter of law, own the underground oil and gas in place, if any[;] . . . the State Oil and Gas Board has not adjudicated a violation of Aa. Code § 9-17-1, *et. seq.*, and Plaintiffs cannot, as a matter of law, prove a material element of their claims[;] . . . Plaintiffs cannot, as a matter of law, prove material elements of a common law waste claim[;] [and] . . . Plaintiffs have failed to satisfy a condition precedent to instituting an action alleging a violation of Ala. Code § 9-17-1, *et. seq.*[,] or a violation of any rule, regulation[,] or order promulgated by the State Oil and Gas Board of Alabama . . ."  (Docs. 24 at 2-3; 26 at 2-3).  In light of the Court's finding that Count Five is due to be dismissed because the statute provides no private cause of action, the Court has omitted any discussion of Defendants' other arguments regarding Count Five.

that Defendants acted with oppression, fraud, wantonness, and did so in a conscious and deliberate manner. (Docs. 24 at 2; 26 at 2). As a threshold matter, the undersigned notes that while Defendants are correct that punitive damages are not available for breach of contract and negligence claims, Plaintiffs have asserted that Defendants engaged in reckless and wanton conduct. Section 6-11-20(a), Ala. Code 1975, provides that punitive damages may be awarded in tort actions 'where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in ... wantonness' that caused injury to the plaintiff. Ala. Code § 6-11-20(a). At this stage of the proceedings, where Plaintiffs have alleged that Defendants engaged in reckless and wanton conduct in their operation of the wells at issue, Defendants have failed to establish that Plaintiffs' claim for punitive damages is not cognizable as a matter of law. Accordingly, Defendants' motions to dismiss Plaintiffs' punitive damages claim are due to be **denied.**

### k. GS

The Court notes, as a preliminary matter, that Plaintiffs neglected to respond to the distinct and separate claims raised by GS. In their amended complaint, Plaintiffs allege that GS was formerly known as STX Energy Texas, LLC, that GS "purchased a 46.75% interest in the Old Home Prospect from the Ankor Defendants, and remains an owner[,]" and that Defendants collectively engaged in the conduct set forth in the complaint. However, in their

response to Defendants' motions to dismiss, Plaintiffs only addressed those claims raised by Defendant Ankor and adopted by Defendant GS. (Doc. 20 at 3, 7). Yet, this Court has held that "[it] will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss." Gailes v. Marengo Co. Sheriff's Dept., 916 F. Supp. 2d 1238, 1243 (S.D. Ala. 2013); see also Anderson v. Greene, 2005 WL 1971116 at * 3, 2005 U.S. Dist. LEXIS 38684 at *8 (S.D. Ala. Aug. 16, 2005) (stating that "the Court deems it proper to consider the Motion to Dismiss on the merits, notwithstanding [plaintiff's] failure to respond."). Therefore, this Court will base its recommendation on a "review [of] the merits of the defendant's position . . ." Gailes, 916 F. Supp. 2d at 1243-44.

### i. GS's Alleged Ownership Interest in the Wells

GS alleges that it "does not own, and has never owned, any interest in the wells or leases" described in Plaintiffs' complaint. (Docs. 26 at 1; 27 at 1; 34 at 2). The Rule 12(b) standard is governed by the Supreme Court's guidance in Twombly, Iqbal, and their progeny, as enumerated *supra*. Additionally, courts in this district are not "free to disregard [a] factual allegation – which yields a plausible *Twombly*/*Iqbal* reference . . . – merely because [a defendant] disputes it." Squires v. BAC Home Loans Serv., LP, 2011 WL 5966948 at *3, 2011 U.S. Dist. LEXIS 137581 at *9 (S.D. Ala. Nov. 29, 2011).

Here, Plaintiffs allege that GS is a Texas company formerly known as STX Energy Texas, LLC, and that the company purchased a 46.75% interest in the Old Home Prospect from the Ankor Defendants. (Doc. 20 at 3, 7). GS, in response, claims that it does not have, and has never had, any ownership interest in the subject wells. (Docs. 26 at 1; 27 at 1). In support of its position, GS included the affidavit of JaeSeung Lee, President of GS E&R America, Inc. (Doc. 27 at 5-6). Consideration of the Lee affidavit, which contains various factual assertions and conclusions, would require that Defendant's motion be converted into a motion for summary judgment. The undersigned declines to do so at this early stage of the proceedings. See Boyd v. Peet, 249 F. App'x 155, 157 (11th Cir. 2007) ("[A]t the motion to dismiss stage, the scope of a court's review must be limited to the four corners of the complaint." (citing Pinellas Cnty., 285 F.3d at 1337)); Hayes v. U.S. Bank Nat'l Ass'n, 648 F. App'x 883, 887 (11th Cir. 2016) ("In evaluating whether a complaint should be dismissed under Rule 12(b)(6) for failure to state a claim, '[a] court is generally limited to reviewing what is within the four corners of the complaint.'" (quoting Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)); Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (A "district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint."); see also Fed. R. Civ. P. 12(d).

Thus, based on the pleadings before the Court, and in light of the _Twombly_ standard, the Court finds that Plaintiffs have pled short and plain statements for relief, such that it is plausible that GS may have an ownership interest in the subject wells. Accordingly, GS's motion to dismiss Plaintiffs' action on the ground that it has no ownership interest in the wells is due to be **denied.**

### ii. _Notice Requirement_

GS also asserts that its motion to dismiss should be granted because "no notice of any kind was given to GS by or on behalf of Plaintiffs concerning any breach of lease, and the leases attached to the First Amended Complaint make the giving of such notice a prerequisite to the filing of any claim." (Docs. 26 a 1; 27 at 2). As noted _supra_, "A condition precedent is a fact (other than the lapse of time) that, unless excused, must exist or occur before a duty of immediate performance of a promise arises. [It] may relate either to the formation of a contract or to liability under it." _Gamble_, 723 So. 2d at 630.

Here, both the Matthews and Kelly Leases contained provisions requiring the parties to provide lessees with notice prior to instituting an action, in order to afford lessees an opportunity to cure any breaches, thus making these requirements conditions precedent to instituting this action. Specifically, the Kelly Lease states, "In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and

implied, lessor shall notify lessee in writing, setting out specifically in what respects lessor has breached this contract." (Doc. 20 at 30). Similarly, the Matthews Lease states, "In the event Lessor considers that operations are at any time not being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof." (Id. at 39).

Plaintiffs aver that they "complied with the notice provisions of the subject Leases, and gave notice to Defendants of the wrongs and injuries and damages claimed herein." (Doc. 20 at 21). However, GS insists that Plaintiffs never provided them with any notice concerning an alleged breach of lease, such that it never had the opportunity to address those alleged breaches, if it had any duty to Plaintiffs. (Docs. 26 at 1; 27 at 2). At this stage of the proceedings, the Court must accept Plaintiffs' factual assertions as true. Accordingly, GS's motion to dismiss Plaintiffs' action for failure to comport with the notice requirements is **denied.**

### iii. *Whether GS Operated the Wells*

Similar to its contention that it has no ownership interest in the wells, GS alleges that Plaintiffs' action is due to be dismissed because GS "was not the operator of any of the wells." (Docs. 26 at 2; 27 at 2; 34 at 2). As noted *supra*, the Court cannot consider the Lee affidavit (doc. 27 at 5-7) without converting

this action into a motion for summary judgment, which it declines
to do at this early stage. Thus, taking Plaintiffs' assertions as
true, that GS and Ankor operated the wells negligently and
wantonly, and failed to act as a reasonable operator, GS's motion
to dismiss Plaintiffs' action because it was not the operator of
any of the wells is due to be **denied** at this stage.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the undersigned RECOMMENDS that
Defendants' motions to dismiss Count Five ("Statutory Claim for
Waste") of Plaintiffs' complaint be **granted**; and that the remainder
of Defendants' motions to dismiss be **denied**.

<u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on
all parties in the manner provided by law. Any party who objects
to this recommendation or anything in it must, within fourteen
(14) days of the date of service of this document, file specific
written objections with the Clerk of this Court. *See* 28 U.S.C. §
636(b)(1); **Fed. R. Civ. P.** 72(b); S.D. Ala. GenLR 72(c).  The
parties should note that under Eleventh Circuit Rule 3-1, "[a]
party failing to object to a magistrate judge's findings or
recommendations contained in a report and recommendation in
accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the
right to challenge on appeal the district court's order based on
unobjected-to factual and legal conclusions if the party was

informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error, if necessary, "in the interests of justice."  *11th Cir. R. 3-1*. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **2nd** day of **May, 2018.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

43