## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| HOOPER W. MATTHEWS, III, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 17-0062-CG-B |
| | ) | |
| ANKOR ENERGY, LLC, *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

This matter is before the Court on the May 2, 2018 Report and Recommendation of the Magistrate Judge (Doc. 38), Plaintiff's motion to reconsider paragraph III (i) of the Report and Recommendation (Doc. 39), the objections to the Report and Recommendation filed by Defendant Ankor Energy, LLC and Ankor E&P Holdings Corp. (collectively "Ankor") (Doc. 41) and Defendant GS E&R America Offshore, LLC ("GS") (Doc. 42) and the responses and replies to the motion to reconsider and to the objections (Docs. 40, 43, 44, 45, 46). After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a *de novo* determination of those portions of the recommendation to which Plaintiff has moved for reconsideration and to which objection is made, the Court deems it proper to sustain Plaintiffs' objection regarding the dismissal of Count Five and to overrule Defendants' objections and adopts the Report and Recommendation, as modified in this Order and Opinion.

**I. Background**

The Magistrate Judge's Report and Recommendation sets forth the circumstances that gave rise to this action as well as the parties' contentions and the parties do not appear to object to those statements. As the Report and Recommendation notes, Defendant Ankor moved for dismissal on a number of grounds:

> (1) the Oil and Gas Board of Alabama has primary jurisdiction to establish whether waste has occurred; (2) Plaintiffs have failed to exhaust their administrative remedies; (3) Plaintiffs are not permitted to collaterally attack the applicable production orders issued by the Oil and Gas Board; (4) the claims asserted by the Kelly Plaintiffs are barred by res judicata; (5) Plaintiffs' claims are barred because they failed to give proper notice of any alleged breaches at issue; (6) Plaintiffs have failed to satisfy a condition precedent for alleging a violation of Ala. Code § 9-17-1 or a violation of any rule, regulation, or order promulgated by the Oil and Gas Board; (7) Plaintiffs' negligence and wantonness claims are barred by the statute of limitations; (8) Plaintiffs cannot assert any tort claims because the duties allegedly breached arise under the leases; (9) the terms and provisions of the Oil and Gas Board are incorporated, by reference, into the lease agreements; (10) Plaintiffs' statutory waste claims are not cognizable under Alabama law, and their common-law waste claim fails as a matter of law; (11) Plaintiffs failed to allege a sufficient basis for punitive damages under Ala. Code § 6-11-20; (12) the Oil and Gas Board has not made a finding of waste as defined under Alabama law, but has instead found that Defendant Ankor's operations were in conformance with the applicable orders, which would prevent waste; and (13) Plaintiffs do not own the underground oil and gas, if any, under Alabama law. (Docs. 24, 25).

(Doc. 38, pp. 4-5). Defendant GS adopted Ankor's arguments and also asserted that it does not own, and has never owned, any interest in the wells at issue or the leases at issue, and that it did not operate any of the wells at issue. The Magistrate Judge

discussed all of the above bases and concluded that Defendants' motions should only be Granted as to their contention that Count Five should be dismissed because no statutory claim for waste exists under ALA. CODE § 9-17-19 (paragraph III (i)). The Magistrate Judge concluded that the motions to dismiss should be denied as to Defendants' other bases. Plaintiffs now moves for reconsideration[1] of paragraph III(i) (which found that Count Five should be dismissed) and the Defendants object to the Magistrate Judge's finding that the motion should be denied as to the remaining bases.

## II. Standard of Review

In reviewing a Magistrate Judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "'Parties filing objections to a Magistrate Judge's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court.'" *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (per curiam) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). Absent objection, the

---

[1] The Court construes Plaintiffs' motion to be an objection to the Report and Recommendation. Although the motion to reconsider could have been referred back to the Magistrate Judge for reconsideration of her Report and Recommendation, the Magistrate Judge's final conclusion would have ultimately come before the undersigned judge for review. As such, the undersigned finds it more efficient to consider Plaintiff's argument as an objection.

district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record in order to accept that recommendation," FED. R. CIV. P. 72, Advisory Committee Note 1983 Addition, Subdivision (b). Further, "the district court has broad discretion in reviewing a Magistrate judge's report and recommendation" —it "does not abuse its discretion by considering an argument that was not presented to the Magistrate judge" and "has discretion to decline to consider a party's argument when that argument was not first presented to the Magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1290–92 (11th Cir. 2009).

## III. Discussion

### A. Ankor's Objections

The Magistrate Judge granted Ankor's motion to dismiss only to the extent Plaintiff claimed a private right of action under § 9-17-19 and rejected all of Ankor's other arguments. Ankor now objects to the Magistrate Judge's conclusion that its other bases for dismissal fail. Ankor's objections generally repeat the arguments it asserted in its motion to dismiss. Ankor asserts that its motion should be granted because: (1) this Court should defer primary jurisdiction to the State oil and Gas Board of Alabama (the "Board"), (2) Plaintiffs have not exhausted their administrative remedies, (3) Plaintiffs' complaint is an improper collateral attack on the Board's Orders, (4) Plaintiffs' complaint is barred by res judicata, (5) Plaintiffs

failed to comply with the notice requirements in the lease, (6) Plaintiff cannot maintain their tort claims because they arise from duties created by the leases, (7) The Board's orders supersede the contractual terms, and (8) Plaintiffs cannot maintain punitive damage claims because their claims sound in contract.

(1) Primary Jurisdiction

As stated by the Magistrate Judge, "Primary jurisdiction is 'a flexible doctrine to be applied at the discretion of the district court.'" (Doc. 38, p. 9, quoting *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988)). "The court can consider various factors but ultimately should base its decision on the totality of the circumstances and the particular facts of the case." *Williams v. Ala. Dep't of Transp.*, 119 F. Supp. 2d 1249, 1255–56 (M.D. Ala. 2000) (citation omitted). "It must be mindful of the fact that abstention, as a practical matter, often permanently deprives the plaintiff of his or her day in court." *Id.* at 1256 (citation omitted).

In the instant case, while the legislature has authorized the Board to resolve certain issues it also expressly provided that "[n]othing contained or authorized in this article and no civil action by or against the board" and no "rule, regulation or order issued under this article … shall impair or abridge or delay any cause of action for damages which any person may have or assert against any person violating any provision of this article or any rule, regulation, or order issued under this article." ALA. CODE § 9-17-19. As the Magistrate Judge noted, the Alabama Supreme Court found it appropriate in *Sheffield v. Exxon Corp.*, 424 So.2d 1297

(Ala. 1982), to hear claims arising from an oil and gas lease even though, as here, there were prior orders issued by the Board. In *Sheffield*, the Court found summary judgment should be denied as to a claim that was based on implied covenants of an oil and gas lease. The Court found that the claim was "not an impermissible collateral attack on the orders of the Board". *Id.* at 1304. The *Sheffield* Court noted that the Alabama statute provides for judicial review of Board rules, regulations and orders when an aggrieved person files a civil action within 30 days from the date of the order, rule, or regulation. *Id.* The *Sheffield* Court found that the Lessors were not precluded from litigating the issue even though the action was filed years after the date of the Board order at issue, as the activities in question occurred several years after the order. *Id.* The Court stated that "[t]o accord the Oil and Gas Board's express order the preemption status urged by Lessees would raise serious due process questions." *Id.* Here, as in *Sheffield*, there are allegations that waste occurred after the orders entered by the Board. Ankor argues that because the Board has exercised jurisdiction over the issue of "waste" and it is an essential element of Plaintiffs' claims, the Court should defer jurisdiction to the Board, "at least until such time, if ever," that the Board determines that waste has occurred. However, while the Court would welcome the Board's expertise, there is no indication that the Board has any immediate plans to make that determination. If the Board was expected to rule on that issue in the near future, a stay of this action until the issue had been decided by the Board might be appropriate, but the parties have not made the undersigned aware of any imminent proceedings or rulings by

the Board on this matter and it is not clear that the Board would necessarily ever rule on the issue. The Court also notes that if the Board were to determine waste occurred, the legal consequences of that determination would still need to be judicially determined since Plaintiffs would have no remedy for damages before the Board.[2] The Board does not have authority to adjudicate breach of contract claims. After considering the circumstances of this case, the Court agrees with the Magistrate Judge that it is not necessary to invoke primary jurisdiction of the Board.

### (2) Exhaustion of Administrative Remedies

The Magistrate Judge found that Plaintiffs' claims should not be dismissed for failure to exhaust remedies because, as in *Sheffield*, much of the alleged waste is alleged to have occurred more than 30 days after the special field rules issued for the subject wells. (Doc. 38, p. 13). Ankor reiterates its argument that Plaintiffs have failed to utilize the administrative remedy available to them under Alabama Code § 9-17-15 and have "failed to exhaust the host of other administrative remedies available to them prior to initiating this action." (Doc. 41, p. 4). However, as

---

[2] That fact alone would not justify declining to invoke primary jurisdiction to the Board. "The doctrine functions not to determine whether the court or agency will finally decide an issue; rather it serves to delay the judicial decision until the court can take advantage of the agency's expertise." *Skybolt Aeromotive Corp. v. MilSpec Prod., Inc.*, 2017 WL 2540817, at *5 (M.D. Fla. June 9, 2017) (citation omitted); *but see, Self v. BellSouth Mobility, Inc.*, 111 F. Supp. 2d 1169, 1172 (N.D. Ala. 2000) ("A court should refer a matter to an agency only where there is a ' "strong possibility" that the agency decision would end the dispute' or at least serve as a ' "material aid in ultimately deciding" ' the issue before the court. *Sprint Corp. v. Evans*, 846 F.Supp. 1497, 1505 (M.D. Ala. 1994) (citations omitted).

mentioned above, the legislature expressly provided that "any cause of action for damages which any person may have or assert against any person violating any provision of this article or any rule, regulation, or order issued under this article" shall not be impaired, abridged or delayed by anything "contained or authorized in this article." ALA. CODE § 9-17-19.  In light of this express mandate as well as the conclusions of the *Sheffield* case discussed above, the Court agrees with the Magistrate Judge that Defendants' motions for dismissal based on lack of exhaustion should be denied.

(3) Collateral Attack on the Board's Orders

As previously mentioned, the *Sheffield* case found that the claim in that case was "not an impermissible collateral attack on the orders of the Board." *Sheffield*, 424 So.2d at 1304.  The Magistrate Judge found the instant case to be analogous to the *Sheffield* case and distinguishable from another Alabama case, *Phillips Petroleum Co. v. Stryker*, 723 So.2d 585 (Ala 1998).  In its objection, Ankor cites as support for its objection two Louisiana cases: *Trahan v. Superior Oil Co.*, 700 F.2d 1004 (5th Cir. 1983) and *Mayer v. Tidewater* Oil Co., 218 F. Supp. 611 (W.D. La. 1963).  However, the applicable Louisiana statutes, contrary to the Alabama statutes, do not state that an action for damages by an aggrieved person shall not be impaired, abridged or delayed by anything contained or authorized in the article. In fact, the Louisiana statute mandates that a person must exhaust his administrative remedies before obtaining court review. *See* LSA-R.S. 30:12. The undersigned, after reviewing the cited cases, agrees with the Magistrate Judge's

conclusion.

(4) *Res Judicata*

Ankor contends that the Kelly Plaintiffs had an opportunity to litigate

their current claims against Ankor in a case brought in the Circuit Court of

Escambia County, Alabama, *Kelly v. Renaissance Petroleum Co., et. al.*, and that

their failure to do so at that time precludes them from attempting to litigate their

claims in the current action. The Magistrate Judge properly stated the standard for

the application of *res judicata* as follows:

> "When [a court is] 'asked to give res judicata effect to a state court
> judgment, [the court] must apply the *res judicata* principles of the law
> of the state whose decision is set up as a bar to further litigation.' "
> *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir.
> 2006) (quoting *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486,
> 1509 (11th Cir. 1985)); *see also Muhammad v. Sec'y, Fla. Dep't of Corr.*,
> 739 F.3d 686, 688 (llth Cir. 2014). Thus, in the instant action,
> Alabama's res judicata principles apply.
>
> Under Alabama law, "the essential elements of res judicata [frequently
> referred to as claim preclusion] are[:] (1) a prior judgment on the
> merits, (2) rendered by a court of competent jurisdiction, (3) with
> substantial identity of the parties, and (4) with the same cause of
> action presented in both actions." *Equity Res. Mgmt., Inc. v. Vinson*,
> 723 So. 2d 634, 636 (Ala. 1998); *see also Wheeler v. First Ala. Bank of
> Birmingham,* 364 So. 2d 1190, 1199 (Ala. 1978). "If those four elements
> are present, then any claim that was, or that could have been,
> adjudicated in the prior action is barred from further litigation."
> *Equity Res. Mgmt.*, 723 So. 2d at 636.

(Doc. 38, pp. 16-17 (internal footnote omitted).  The Magistrate Judge found that

the first three elements were met but found that the fourth element was not met

because claims presented in the state case were not based on the same "substantial

evidence" because the state court breach-of-lease claims alleged failure to pay

9

royalties as a result of their successful drilling, whereas the claims in this case arise from the alleged existence of waste and focus on different conduct. In its brief in support of dismissal, Ankor argues that because any claims arising under the Kelley leases could have been litigated in the former action, they are barred by *res judicata*. Although not previously argued, Ankor but now points out that an Alabama statute prohibits the splitting of a cause of action for breach of contract into several separate suits and requires that "all breaches occurring up to the commencement of the action must be included therein." (Doc. 41, p. 12, citing ALA CODE § 6-5-280).  The statute states the following:

> If a contract is entire, only one action can be commenced for breach thereof; but if it is severable or if the breaches occur at successive periods in an entire contract, as where money is to be paid by installments, an action will lie for each breach; provided, that all the breaches occurring up to the commencement of the action must be included therein.

ALA. CODE § 6-5-280.  Thus, although the alleged breaches raised in the prior suit involved different evidence, the Kelly Plaintiffs were required to bring all breach claims together that had occurred "up to the commencement of the action" unless the different breaches were of severable portions of the contract.

"[T]he divisibility of a contract depends on the intention of the parties as found from the apportionability of the contract's consideration, the subject matter and object of the entire contract, and any other pertinent facts surrounding its making at the time it was made." *Vill. Inn Pancake House of Mobile, Inc. v. Higdon*, 294 Ala. 378, 382, 318 So. 2d 245, 249 (1975); *see also Benchmark Homes, Inc. v. Aleman*, 786 So. 2d 1101, 1104 (Ala. 2000) (citations omitted) (" 'A test of

severability which has frequently been applied is to the effect that, if the consideration is single, the contract is entire, but if the consideration is either expressly or by necessary implication apportioned, the contract will be regarded as severable.'"); *Blythe v. Embry*, 36 Ala. App. 596, 597, 61 So. 2d 142, 143 (Ala. Ct. App. 1952) (citation omitted) ("The consideration to be paid, and not the subject or thing to be performed, determines whether a contract is entire or severable. If it is expressly, or by implication, apportioned, the contract is severable."). Here, the prior breaches relate to royalties to be paid from production from the wells and the breaches in the instant case also relate to the production of the wells. The breaches concern the entire purpose of the agreement. Although the conduct complained of in the first breaches (the failure to pay), and the conduct complained of in the current breach claims (Defendants' operation of the wells) is very different, the agreement to act as a reasonably prudent operator is clearly entwined with the agreement to pay royalties. Notably, Plaintiffs have not argued that the contract is severable. Accordingly, the Court finds the contract is not severable.

However, Ankor acknowledges that the claims in the prior suit involving these same wells "were removed from the case prior to trial." (Doc. 33, p. 24 n 7). There are no allegations in the complaint to further explain what happened procedurally to those claims and the undersigned is not aware of the circumstances under which these prior breach-of-contract claims were "removed." It is unclear whether the claims were voluntarily dismissed or whether a final disposition of those claims was accomplished in the prior lawsuit. Unless the first claims were

disposed of with prejudice to the Kellys' right to reassert them, they have not been fully or finally litigated. Section 6-5-280 bars a second action, but if the claims were not finally litigated and arose out of a different nucleus of facts, then Plaintiff would be free to raise them in a new action and § 6-5-280 would not prohibit such claims.[3] Accordingly, the Court finds that Defendants have not demonstrated that § 6-5-280 bars the Kellys' breach of contract claims here.

The Magistrate Judge found, and the undersigned agrees, that the current breach of contract claims did not arise out of the same nucleus of facts as the claims asserted in the prior lawsuit. Accordingly, the Court finds that res judicata does not bar these claims.

### (5) Failure to Comply with Notice Requirements

Ankor contends that Plaintiffs did not comply with the notice requirements under the lease. There is no dispute that the leases contain notice requirements. There also appears to be no dispute that Plaintiffs sent Ankor correspondence intended to satisfy the notice requirements. As the Magistrate Judge stated, "[t]here exists a conflict as to whether the correspondence sent by Plaintiffs to Ankor comport with the requirements contained in the leases." (Doc. 38, p. 23). Accordingly, the undersigned agrees with the Magistrate Judge that at this stage of the proceedings, where Plaintiffs' factual assertions are taken as true, it is

---

[3] If the claims were not extinguished and the Kelly Plaintiffs still have any viable claims that arose prior to the commencement of this case for failure to pay royalties under the lease, then § 6-5-280 requires that they assert them here with their current breach of contract claims.

premature to determine if the notices were sufficient as a matter of law.

(6) Tort Claims

Ankor contends that Plaintiffs cannot maintain their tort claims because they arise from duties created by the leases. The Magistrate Judge noted there are recognized exceptions to the rule that failure to perform under a contract will not give rise to an action in tort and found that because Plaintiffs' tort claims are based on an alleged implied duty it was unclear at this juncture whether Plaintiffs' negligence and wantonness claims are in actuality contract claims masquerading as tort claims. While "an ordinary breach of contract will not give rise to a tort," "[i]t is possible for a tort to arise in Alabama out of a breach of a duty implied by or arising out of a contract." *Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1371 (11th Cir. 1983) (citation omitted). In *Brown-Marx* the Court found there was no actionable tort because the claim alleged a violation of an obligation "plainly set out in the contract itself." *Id.* "The *Brown–Marx* panel distinguished between claims for breach of an obligation expressly set forth in the contract (which are not actionable in tort under Alabama law) and claims for breach of a duty implied by or arising out of the contract (which may be actionable in tort)." *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455, at *14 (S.D. Ala. April 1, 2008) (citing *Brown–Marx*, 703 F.2d at 1371). Here, the Plaintiffs allege Defendants were negligent and wanton by causing waste and allowing coning and channeling to occur which is prohibited by Alabama oil and gas statutes and by failing to act as reasonably prudent oil and gas operators. These alleged duties are not set out in the contracts.

They allegedly arise from both the contract and the Alabama statutes. "[T]ort duties may arise from statute, regulation, common law or contract," but if it is from contract, "Alabama law recognizes that misfeasance of a contract will support a tort duty, nonfeasance of a contract will not." *Powers v. CSX Transp., Inc.*, 190 F. Supp. 2d 1284, 1295 (S.D. Ala. 2002). Here, to the extent the duties arise from the contracts, the Plaintiffs do not claim that the Defendants wholly failed to perform, but that they did so negligently or wantonly. Thus, Plaintiffs allege misfeasance, not nonfeasance. "'When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty—but does not imply a contract—to exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available because there is no express or implied contract which is breached.'" *Great N. Land & Cattle Inc. v. Firestone Tire & Rubber Co.*, 337 So. 2d 1323, 1327 (Ala. Civ. App. 1976) (quoting *Waters v. American Cas. Co. of Reading, Pa.*, 261 Ala. 252, 258, 73 So.2d 524 (1953)). "[W]hen the allegation points to misfeasance, the claim can sound in tort or in contract, so the court looks to the gist or gravamen of the complaint and the evidence provided to determine whether the duty arose from the contract or from a general duty of care owed to everyone." *Citizens Bank & Tr. v. LPS Nat. Flood, LLC*, 51 F. Supp. 3d 1157, 1172 (N.D. Ala. 2014) (citation omitted). In *Citizens Bank & Tr.*, the Court found the claims could not be maintained as tort claims because the contract expressly provided not only that the specific services would be provided but that they would be done accurately. The *Citizens Bank & Tr.* Court distinguished the

14

claims from those in *Marsh v. Southern Airways, Inc.*, 316 F.2d 91 (5th Cir. 1963), as follows:

> "When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty—but does not imply a contract—to exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available because there is no express or implied contract which is breached." *Marsh*, 316 F.2d at 93–94 (quoting *Waters*, 73 So.2d at 529). In the instant case, the contract is written, not implied, and it expressly stated promises by LPS not only to provide flood zone determinations but also to do so accurately. Accordingly, the *Marsh* decision does not require a different result.

*Citizens Bank & Tr.*, 51 F. Supp. 3d at 1173. In the instant case, Plaintiffs' tort claims allege a duty of reasonable care that was not expressly stated in the contracts. In fact, the duties to not cause waste or to allow coning and channeling to occur appear to arise at least in part from Alabama's oil and gas statutes. Thus, the claims appear to be actionable as tort claims. However, as stated above, the Court must look to the complaint <u>and the evidence</u> in support to determine whether the duty arose from the contract or from a general duty of care owed to everyone. Accordingly, the Court agrees with the Magistrate Judge that at this juncture, it is unclear whether Plaintiffs' negligence and wantonness claims can be maintained as torts.

### (7) Whether the Board's Orders Supersede the Contractual Terms

In the Orders at issue, the Board granted Ankor's petitions to establish new oil fields, to reform or establish a production unit, to adopt special filed rules for those oil fields and to establish field limits for those oil fields. (Doc. 25-1, pp. 1-51).

The Orders state that the granting of the petitions will prevent waste and will protect the corelative rights of the mineral interest owner. The Court understands the Orders to essentially grant Ankor a permit to commence drilling operations on the properties. The Orders set certain rules that the Board believes are necessary to prevent waste and protect the land owners but do not determine that there will in fact be no waste ever so long as the specified rules are met. "[F]or a Board order to 'supersede or supplement' a provision in a private contract the Board order and the contractual provision must conflict." *Pac. Enterprises Oil Co. (USA) v. Howell Petroleum Corp.*, 614 So. 2d 409, 414 (Ala. 1993) (citation omitted).  Ankor has not pointed to any specific provisions of the lease that conflict with the rules or limits set by the permits. Nor does the Court understand the Plaintiffs' claims to assert that Defendants breached the leases or other duties because they filed to comply with lease provisions that violated the rules or limits set by the permits. The Orders supplement the leases to the extent they require Ankor to do more than the leases require, but the Court agrees with the Magistrate Judge that Ankor has not shown that they conflict with the leases or with Ankor's alleged duty to act as a reasonably prudent operator.

(8) Punitive Damages

Defendants assert, and the Magistrate Judge agreed, that punitive damages are not available for Plaintiff's breach of contract or negligence claims.  However, Plaintiffs allege in their amended complaint that that Defendants engaged in reckless and wanton conduct. (Doc. 20, ¶68).  To recover punitive damages Plaintiffs

must "prove[ ] by clear and convincing evidence that the defendant[s] consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff[s]." ALA. CODE § 6-11-20(a). Ankor argues that the claim for punitive damages fails to meet the requirements of § 6-11-20 because the wantonness claim does not specify that Defendants acted "consciously or deliberately." However, § 6-11-20 does not state that Plaintiff must specifically allege in the complaint that the conduct was conscious or deliberate, but only that to recover punitive damages it must be <u>proven</u> to be consciously or deliberately done. Accordingly, the undersigned agrees with the Magistrate Judge that Defendants have not shown that Plaintiffs' cannot recover punitive damages.

### B. Plaintiff's Objection: Private Right of Action under ALA. CODE § 9- 17-19

The Magistrate Judge found that ALA. CODE § 9-17-19 does not provide a private statutory claim for waste. The Magistrate Judge was persuaded by the reasoning of the Colorado Supreme Court in *Gerrity Oil & Gas v. Magness*, 946 P.2d 913 (Colo. 1997), *as modified on denial of reh'g* (Oct. 20, 1997), in which that court construed a similar Colorado statute and found it did not create a private cause of action.

The Alabama statute at issue, § 9-17-19, states the following:

(a) Nothing contained or authorized in this article and no civil action by or against the board and no penalties imposed or claimed against any person for violating any provision of this article or any rule, regulation or order issued under this article and no forfeiture shall impair or abridge or delay any cause of action for damages which any person may have or assert against any person violating any provision

17

of this article or any rule, regulation or order issued under this article. Any person so damaged by the violation may institute a civil action for and recover such damages as he may show that he is entitled to receive.

(b) In the event the board should fail to bring a civil action to enjoin any actual or threatened violation of any provision of this article or of any rule, regulation or order made under this article, then any person or party in interest adversely affected by such violation or threat thereof and who has requested the board to institute a civil action in the name of the state may, to prevent any or further violation, bring a civil action for that purpose in any court in which the board could have brought a civil action. If, in such civil action, the court holds that injunctive relief should be granted, then the state shall be made a party and shall be substituted by order of the court for the person who brought the action, and the injunction shall be issued as if the state had at all times been the complaining party.

ALA. CODE § 9-17-19.  The Colorado statute provided:

Nothing in this article, and no suit by or against the commission, and no violation charged or asserted against any person under this article, shall impair, abridge, or delay any cause of action for damages which any person may have or assert against any person violating any provision of this article, or any rule, regulation, or order issued under this article. Any person so damaged by the violation may sue for and recover such damages as he otherwise may be entitled to receive.

§ 34–60–114, 14 C.R.S. (1995).  In *Magness*, the court found that the phrase "any cause of action which a person may have or assert" in the Colorado statute merely preserves a person's right to assert any cause of action for damages the person might have.  *Magness*, 946 P.2d at 924.  The court found that that phrase "does not, standing alone, give rise to a damages remedy."  *Id*.  The Alabama statute includes almost identical language: "any cause of action for damages which any person may have."  However, the Alabama statute also provides that "[a]ny person so damaged by the violation may institute a civil action for and recover such damages as he may show that he is entitled to receive."  A plain reading of this language indicates that

a person damaged by a violation of this article may bring a civil action to recover damages. The Colorado statute has similar language but, as pointed out by the *Magness* Court, the Colorado statute qualifies the right by providing only that a person may sue to recover "such damages as he <u>otherwise</u> may be entitled to receive." The *Magness* court found that "[t]he use of the term, 'otherwise,' clarifies that a person may be entitled to receive damages when there is a violation of a commission rule, but that it is not the violation which gives rise to the entitlement." *Magness*, 946 P.2d at 924. The Alabama Statute does not clarify that the damages a person may sue for are those that he <u>otherwise</u> may be entitled to receive.

The Magistrate Judge also discussed *King v. Estate of Gilbreath*, 2016 WL 7626248, (D.N.M. Mar. 30, 2016), which found that a similar New Mexico statute provided a private right of action for damages for waste. The New Mexico statute provided the following:

> Nothing in this act contained or authorized, and no suit by or against the commission or the division, and no penalties imposed or claimed against any person for violating any statute of this state with respect to conservation of oil and gas, or any provision of this act, or any rule, regulation or order issued thereunder, shall impair or abridge or delay any cause of action for damages which any person may have or assert against any person violating any statute of the state with respect to conservation of oil and gas, or any provision of this act, or any rule, regulation or order issued thereunder. Any person so damaged by the violation may sue for and recover such damages as he may be entitled to receive. In the event the division should fail to bring suit to enjoin any actual or threatened violation of any statute of this state with respect to the conservation of oil and gas, or of any provision of this act, or of any rule, regulation or order made thereunder, then any person or party in interest adversely affected by such violation, and who has notified the division in writing of such violation or threat thereof and has requested the division to sue, may, to prevent any or further violation, bring suit for that purpose in the district court of any

county in which the division could have brought suit. If, in such suit, the court holds that injunctive relief should be granted, then the division shall be made a party and shall be substituted for the person who brought the suit, and the injunction shall be issued as if the division had at all times been the complaining party.

*King*, 2016 WL 7626248, at *4. The New Mexico court discussed the *Magness* case but found the New Mexico statute was different because it referred to violations of any statute in the first sentence and did not use the word "otherwise" in the second sentence. The *King* court explained the difference as follows:

> The Colorado court concluded that the emphasized language indicates that there was no intention to create a private cause of action. Use of the word "may" shows that a violation of the Oil and Gas Conservation Act or commission rule does not, by itself, give rise to a damages remedy. Use of the "otherwise" clause confirms that it is not the violation of the Act or commission rule itself that gives rise to an entitlement to damages. [*Magness*, 946 P.2d at 924].
> In contrast, the New Mexico statute does not include "otherwise." And the Colorado court's conclusion on the effect of the word "may" depends on the fact that the Colorado statute only refers to violations of the Act or commission rule. But New Mexico's Section 70-2-29 additionally refers to violations of "any statute of the state with respect to conservation of oil and gas." Use of the word "may" in Section 70-2-29 therefore does not suggest that violation of New Mexico's Oil and Gas Act does not give rise, by itself, to a damages remedy.
> Because of the critical differences in the statutes, the Court is not persuaded by the Energen Defendants' argument that Section 70-2-29 does not create a private cause of action. Instead, Section 70-2-29 provides that any person may sue for damages if injured by a violation of: the Oil and Gas Act; a rule, regulation or order issued under the Oil and Gas Act; or "any statute of the state with respect to conservation of oil and gas." *See Marbob Energy Corp. v. New Mexico Oil Conserv. Comm'n*, 2009-NMSC-013, ¶ 9, 206 P.3d 135, 139 (providing that court looks to plain language, construing statute in accordance with legislative intent).

*King*, 2016 WL 7626248, at *5.

The Alabama statutes' mandate that "[a]ny person so damaged by the

violation may institute a civil action for and recover such damages as he may show that he is entitled to receive" is nearly identical to the language of the New Mexico statute which states: "[a]ny person so damaged by the violation may sue for and recover such damages as he may be entitled to receive." As previously pointed out, Alabama's statute does not include the word "otherwise" to indicate the civil actions referred to arose from something other than the statute.  However, the Alabama statute does not refer to violations of "any statute of this state with respect to conservation of oil and gas," which was the second fact the *King* court found distinguished the New Mexico statute from the Colorado statute. Thus, Alabama's statute can be distinguished from both the Colorado and the New Mexico statute. However, the Court does not find that the fact that the Alabama statute does not refer to violations of other oil and gas statutes changes the plain meaning of the mandate that any person damaged by a violation of the statute may institute a civil action for damages.  Though neither the parties not the Court have found examples of civil actions that have been brought under ALA. CODE § 9-17-19, there have also been no cases uncovered that dismissed such claims or ruled that no private right of action could be maintained. The undersigned concludes that the Alabama statute does provide a private right of action. Accordingly, Plaintiffs' objection is sustained and Defendants' motion to dismiss Count Five of Plaintiffs' complaint based on the lack of a statutory claim for waste will be denied.

### C. GS's Objections

GS contends that it does not and has never owned any interest in or operated

the wells or leases at issue and that it never received any notice of any claimed breach of any of the leases. In support of these contentions, GS submitted the declaration of its president, JaeSeung Lee. (Doc. 27, p. 5-6). The Magistrate Judge noted that Plaintiffs did not address GS' factual contentions in their opposition to the motion but stated that the Court "will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss." (Doc. 38, p. 38 (quoting *Gailes v. Marengo Co. Sheriff's Dept.*, 916 F.Supp.2d 1238, 1243 (S.D. Ala. 2013) and also citing *Anderson v. Greene*, 2005 WL 1971116 at *3, (S.D. Ala. Aug. 16, 2005)). The Magistrate Judge found that the allegations of the complaint satisfied the *Twombly* standard and that the Court could not consider the Lee affidavit without converting the motion to a motion for summary judgment. (Doc. 38, pp. 38-39). GS argues that the Court should have converted the motion since Plaintiff did not address GS's contentions and the facts are therefore "undisputed." However, the undersigned agrees with the Magistrate Judge that the motion should not be converted at this early stage of the proceedings. Plaintiffs' complaint contains specific factual allegations contrary to GS's assertions and Plaintiffs should be given the opportunity to conduct some discovery to prove those allegations.

## IV. Conclusion

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a <u>de novo</u> determination of those portions of the report and

recommendation to which objection is made, the report and recommendation of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) is **ADOPTED** as the opinion of this Court with the **MODIFICATION** explained above that Defendants' motion to dismiss Count Five of Plaintiffs' complaint based on the lack of a statutory claim for waste will be denied.

Accordingly, it is **ORDERED** that Defendants' motions to dismiss (Docs. 24 & 26), are hereby **DENIED** in their entirety.

**DONE** and **ORDERED** this 13th day of August, 2018.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE